HENRY ZIMMERMAN, Plaintiff-Appellant and Cross-Appellee, *v.* CLEO BIRDGE, Defendant-Appellee and Cross-Appellant.—(Birdge-Zimmerman, Inc., Defendant.)

Fourth District   No. 4—82—0073

Opinion filed December 13, 1982.

James Kuehl, of Merriman, Finch & Kuehl, of Urbana, for appellant.

Ted Crewell, of Pelini, Crewell & Sheffler, of Urbana, for appellee.

JUSTICE MILLS delivered the opinion of the court:

This suit for accounting involves a stipulation between the litigants as to procedure in the trial court.

(And we note initially that stipulations are not only favored, but are to be encouraged.)

Henry Zimmerman and Cleo Birdge each owned 50% of the outstanding shares of Birdge-Zimmerman, Inc. Zimmerman sued for an accounting and also alleged several other theories of Birdge's liability.

By stipulation of the parties, the accounting action was tried first by the court without a jury. The remaining issues were to be tried by a jury if they were not found to be *res judicata* by virtue of the accounting judgment. The court's judgment order on the accounting issues found that no further issues were left for trial.

Plaintiff appeals, arguing that certain findings of the court on the accounting action were against the manifest weight of the evidence, and urging this court to enforce the stipulation by remanding for trial on the remaining issues. Defendant Birdge cross-appealed but moved in his brief for voluntary dismissal. There being no objection, the

cross-appeal is dismissed.

We affirm on the accounting action and remand.

FACTS

Zimmerman and Birdge formed the corporation, chartered in 1969, by combining the meat locker plant owned by Zimmerman with a portion of Birdge's cattle-raising operation. Birdge already operated a 300-acre farm with a feeder lot and deeded two acres of this land along with two Harvestore silos to the corporation. He was to build—and did build—a modern confinement type feeder lot for corporation use on this property. Zimmerman deeded the locker plant to the corporation.

As a shareholder, Zimmerman filed a five-count complaint on May 11, 1976, alleging that Birdge: (1) was a director and president of the corporation; (2) exercised responsibility for operation of the feed lot owned and maintained by the corporation; and (3) had a fiduciary duty to the corporation, as president and director, to act in the best interests of the corporation and to refrain from converting corporate assets to his own use. It was alleged that this fiduciary duty was violated by several actions itemized in the complaint, including conversion of 66 bulls and feed supplies. It was further alleged that, as a director and president of the corporation, defendant was in the position of a trustee toward the plaintiff as beneficiary and that plaintiff was entitled to rely on Birdge to conduct himself and discharge his duties and obligations accordingly. In more specific allegations, it was stated that Birdge failed to comply with a leasing agreement between the shareholders and the corporation and that Zimmerman was compelled to personally assume certain corporation debts to prevent foreclosure against corporation assets.

A bench trial on the accounting issue was held beginning November 2, 1981. Prior to the taking of evidence, the court noted a stipulation as to the use of a report by Elizabeth Curzon. This report was an audit of the corporation from its inception to December 31, 1972, constructed from the business and banking records of the corporation (such as they were) made available to her. The parties stipulated that the report should be admitted into evidence and that the figures stated in the report were to be accepted as a true and accurate accounting except to the extent that any figure in the report was impeached, altered or supplemented by competent evidence. The effect of this stipulation, as noted by the trial court, was to put the burden of proving any inaccuracy in the report on the party asserting such inaccuracy. The parties had also stipulated that the court should treat

December 31, 1972, as the closing date for corporate operations, but plaintiff would introduce evidence to show the parties entered a lease agreement with the corporation in March of 1973 and, should the court find that there was such an agreement, this should be taken into account.

Elizabeth Curzon testified that she was hired by the attorneys to perform an audit of the corporation but that it was impossible to verify all of the records. Due to the passage of time, she was unable to verify beginning assets and liabilities and it was very difficult to confirm the ending assets and liabilities. The funds of Zimmerman and the corporation were commingled and there was no general ledger kept by the corporation. She had to reconstruct bank records from the bank account, but a complete reconstruction was not possible.

The court found that: The business terminated on December 31, 1972, there was no lease agreement reached between the parties in March of 1973; and the corporation accounting prepared by Curzon was confirmed as the corporation accounting except for two changes. Those exceptions were that (1) defendant was required to account to plaintiff for 26 cattle by paying to plaintiff $3,770, and that (2) defendant was required to account to plaintiff for 30 bulls sold for $10,443.49, by paying to plaintiff one-half such amount.

### MANIFEST WEIGHT

Plaintiff's brief is a rather rambling mixture of narrative and uncertain argument which fails to unravel which findings of the trial court are challenged on appeal or construe the relevance of the findings to the ultimate disposition of the case. However, it is requested that this court find a certain 66 cattle were sold between July and November of 1972, that the "cattle record" book maintained by Birdge is an unreliable record, and that the parties entered into a lease agreement in March of 1973.

Regarding the time of sale of the 66 cattle, the trial court did, in fact, find that the 66 cattle were sold between July and November of 1972. Defendant made a judicial admission of this fact by his answer to plaintiff's complaint. (*Regan v. Berent* (1945), 392 Ill. 376, 64 N.E.2d 483.) The trial court noted this in its able memorandum of decision and also noted evidence that coincided with these admissions. Although the court stated that it appeared the cattle were sold prior to January 1, 1973, we do not interpret this as incongruous with the admission. As noted earlier, the parties stipulated that the court should treat December 31, 1972, as the closing date for court operations. It appears the latter statement was made as a prologue to the

conclusion that the sales were corporate transactions, rather than personal transactions. Since they were corporate transactions, and 30 of the cattle were unaccounted for, the court ordered Birdge to pay plaintiff one-half of the selling price of these 30 cattle.

We are uncertain of the entire relevancy which plaintiff attaches to the factual finding that the cattle were sold before November 1972. However, the date of sale is used by plaintiff in a somewhat vague argument to support a challenge to the finding that 14 cattle, which were purchased with the 66 cattle in a lot of 80, died. The varied arguments against this finding hinge on the assertion that the records show the cattle died on December 4, 1972. However, the entry recording the deaths is directly above another entry dated December 4 and after an entry of June 30. It is by no means apparent that the entry is supposed to reflect the death of 14 bulls on December 4. Therefore, all of the arguments which challenge this finding must fail.

█ Zimmerman next urges this court to find that the cattle record book maintained by Birdge was unreliable. Curzon relied upon entries in the cattle record book for the inclusion of two specifically challenged items in her report: the death of the 14 bulls and a credit to defendant of 242 cattle weighing 240,000 pounds which the book reflects were transferred from Birdge's personal stock to the corporation. Plaintiff asserts that the cattle record book was shown to be unreliable since it was testified that certain portions of it were reconstructed, the book was pointed out to be in error in two other instances by Elizabeth Curzon, and there was testimony that if the records were accurate the feed used should have produced approximately 30% to 40% more weight gain than shown by the record.

As already discussed, plaintiff has failed to make any persuasive argument impeaching the entry recording the deaths of 14 bulls. Although a document examiner testified that pages 7 through 10 of the cattle record book were reconstructed, and the deaths of the 14 bulls were recorded on those pages, the trial court found this testimony to be of little probative value and we note that there was no direct evidence that the entries were inaccurate.

Stanley Butt, who had previously run his own cattle-raising operation, testified that from the weight gains and feed used, as shown by the cattle record books, it was hard to imagine that certain cattle sold in December and January had the poor weight gain reflected by the records. This was merely opinion testimony constituting tenuous circumstantial evidence which was impeached on cross-examination by Butt's admission that he did not factor into his calculations feed consumed by cattle that were sick and/or had died. A veterinarian had

testified that he had seen cattle with shipping fever (a respiratory disease) on Birdge's farm in 1971 and 1972. He had also seen dead cattle on Birdge's farm. Butt admitted that sick cattle would not be expected to gain as much weight as healthy cattle.

Finally, we do not believe that the fact that the cattle record book was in error in two specific instances requires a finding that the book is generally unreliable. Plaintiff has been able to produce only circumstantial evidence and innuendos that something was wrong somewhere, but he has failed to produce sufficient evidence to justify a finding that it was against the manifest weight of the evidence to rely on the cattle record book.

Plaintiff has specifically addressed himself to the entry regarding the 242 cattle, asserting that its inaccuracy is indicated by what appears to be an estimated weight, and Curzon was unable to confirm that she had checked certain scale tickets against the cattle record book entry. However, we note that defendant testified he weighed these 242 cattle. Although Curzon was unable to confirm that she had specifically cross-checked the scale tickets against this entry, she testified that she had had the scale tickets for the 242 cattle when doing her audit. Plaintiff's attempt to impeach this particular entry was insufficient.

■ Zimmerman's next argument is that the manifest weight of the evidence shows the parties made an agreement in or about March of 1973 regarding leasing of corporate assets. It was undisputed that there was a meeting between the parties with their accountant and attorney present. There was also a representative from Production Credit Association (PCA) which had made loans to the corporation. The meeting was to discuss financial burdens of the corporation and attempt to solve them. Plaintiff testified that he understood a certain agreement had been reached at the meeting whereby plaintiff and defendant would each pay certain monies per month as rent to the corporation and this money would in turn be paid to the PCA. Plaintiff stated that the attorney was to reduce the terms discussed at the meeting to writing. A lease agreement was in fact prepared by the attorney, but was not signed by either party. Defendant contends that there was no agreement, noting that the written instrument was never signed.

There is also testimony as to a subsequent meeting resulting in a loan agreement with terms to repay PCA, the agreement being signed by both plaintiff and defendant. The terms of this loan agreement were not the same as the alleged lease agreement. In response to a question as to whether anything in regard to the alleged lease

agreement had been changed by the subsequent PCA meeting, plaintiff testified that he was so confused he really did not know what was going on. He also stated that he did not believe the second agreement modified the earlier lease plan.

The trial court found that it could not conclude there was an agreement on the confused memory of one party to the alleged agreement. The court noted that, in view of the manner in which the parties handled the corporate business and records, it was reasonable to believe there was considerable confusion and no actual agreement. We do not believe this finding is against the manifest weight of the evidence.

We are also requested to find that Birdge's testimony was generally unbelievable such that any finding based upon his testimony cannot stand. Birdge points out it is axiomatic that the determination of credibility is a function for the trier of fact. Zimmerman responds that Birdge's evidence and assertions are so incredible as to clearly reveal their unreliability, rendering the demeanor of the witnesses a mere minor detail in judging credibility.

There is no need to create any exception to the general rule. If defendant's evidence and assertions are so contradictory and unbelievable, then findings based on that evidence should be found to be against the manifest weight of the evidence. We do not find the evidence to be of such character. Rather, we believe the following comments from the trial court's memorandum of decision are fair reflections on the general nature of the evidence indicating justified assessment of the credibility of the parties:

"The evidence is in considerable conflict and, as the parties indicate by their testimony, is most confusing. Exact computation of amounts of receipts, expenses and inventory is virtually impossible. The cause of this uncertainty rests primarily with the records kept, or not kept, by the parties.

\* \* \*

I found nothing in the manner and demeanor of the parties to indicate either party was testifying falsely. On the contrary, the testimony of each was consistent with their record-keeping and business practices as a corporation: incomplete, informal, confused and lax.

\* \* \*

Defendant appeared stubborn at times, and both parties confused, but this is consistent with how they managed the corporate business and the fact that so many years have passed since the occurrences in question."

Once again, we note that in accordance with the parties' stipulation regarding use of the Curzon report, the burden of proof was on the party attempting to impeach the Curzon report with competent evidence. Plaintiff's evidence merely offers the hypothesis that something was wrong somewhere, but does not prove that anything specific was actually inaccurate other than the two instances in which the trial court did find for plaintiff which Birdge has not challenged on appeal. Therefore, we affirm all of the trial court's findings.

STIPULATION

■ Finally, we address the parties' stipulation providing for bench trial of the accounting issue and the trial court's determination that the accounting judgment was determinative of all other issues. The stipulation provided that the parties agreed to present their evidence to the court for a bench trial for findings as to an accounting and that said accounting should be tried before any other issue is raised by the proceedings. All other issues would be reserved for a trial by jury after the accounting judgment. However, following entry of the accounting judgment, the court would rule on any motions requesting a declaration that other issues are *res judicata* by virtue of the accounting judgment. Without awaiting the motions by the parties, the court simply noted in its judgment order that there were no issues to be presented to the jury.

Plaintiff asserts that at trial the court did exclude evidence which was objected to as not being relevant to the accounting issues of the case and that, although evidence on the accounting issue and other issues would overlap at times, it could not be expected that there would be enough evidence in the accounting trial to support the other issues in the complaint. Therefore, this court should enforce the stipulation. Defendant argues plaintiff waived his right to the jury trial by certain remarks made in plaintiff's opening statements. Furthermore, defendant asserts the stipulation was not controlling, but was in the court's discretion.

The record reveals that two objections were sustained on the grounds that the testimony was not relevant to the accounting issue. We do not believe plaintiff's opening statement should be interpreted as waiving his right to jury trial nor should it be given such an effect. "[I]t has long been the policy of Illinois courts to enforce stipulations relating to the conduct of litigation unless the stipulations are a result of fraud or are illegal or contrary to public morals." (*Burris v. John Blue Co.* (1976), 44 Ill. App. 3d 653, 655-56, 358 N.E.2d 724, 725.) We believe it should be the policy of the courts to encourage such stipula-

tions, especially where designed to expedite the judicial proceedings. We express no opinion as to whether the other issues raised by the pleadings were rendered *res judicata* by the accounting judgment. However, we do remand to the trial court for further proceedings pursuant to the stipulation.

For the reasons stated, we affirm the trial court's findings on the accounting judgment and remand for proceedings on other issues in accordance with the stipulation.

Affirmed in part, reversed in part, and remanded. Cross-appeal dismissed.

TRAPP and LEWIS, JJ., concur.